IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:09-00111

TRACEY ROBBINS

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Tracey Robbins' Motion to Suppress Statement. [Doc. No. 14]. On July 20, 2009, the Court held a hearing on the matter and ordered supplemental briefing. Having considered the issues raised, the Court **DENIES** the motion.

**I.
FACTS**

On March 12, 2009, at approximately 9:30 p.m., three plain clothed police officers went to Defendant's apartment to speak with her regarding an ongoing drug investigation. At the hearing, Tom Bevins, a Special Agent for the Drug Enforcement Administration (DEA), stated he knocked at her door and Defendant answered. Agent Bevins said he identified himself and the other two officers who were with him and asked if they could come into her apartment. Defendant said no. However, Defendant walked outside and spoke with the officers. Agent Bevins testified that he told Defendant she was not under arrest, but they wanted to speak with her about her involvement with Clarence Torres, who they believed was transporting drugs from Detroit, Michigan to Huntington, West Virginia. It is undisputed that Defendant was not given any Miranda warnings. According to Agent Bevins, Defendant denied knowing Mr. Torres at first but, after she was given a description of him, she admitted she knew him as "C."

During the conversation, Defendant and Agent Bevins were sitting on a step outside of the apartment, and Defendant became very upset and was crying loudly. Agent Bevins stated that he put his hand on her leg and back to calm her down and asked if they could go inside. All the officers testified that it was cold outside, and Defendant was dressed only in shorts and a tanktop. Defendant agreed to let the officers go inside with her.

Once inside, Agent Bevins sat on a sectional couch near Defendant and continued asking her questions about her involvement in the drug trade and a gun she allegedly had obtained. Agent Bevins said he told her that he believed she was only telling half-truths and they were going to leave if she continued to lie. Agent Bevins also told her that he was going to present the investigation to the United States Attorney's Office, but it was up to that Office to make prosecutorial decisions. He said that, if she cooperated, he would relay that information to the prosecutor. Agent Bevins stated Defendant got up and was pacing the floors, but then sat back down and curled up in a fetal position and cried. Agent Bevins told Defendant he was leaving and the officers began heading towards the door, but she told him to come back and then began disclosing information regarding her involvement in the conspiracy. He said he never made any threats, never restricted her movements, and she never asked them to leave. He said they discussed the gun, and Defendant told him that she thought she knew where the gun was, but it was not in the apartment. She offered to allow the officers to search her apartment, but they did not do so. She also told the officers she was afraid of retribution. Agent Bevins testified that he told her he was not going to tell anyone they were there and he advised her to do the same. On cross-examination, Agent Bevins explained that he did not specifically remember saying to her "We were not here" but, if he did, it

was in relation to her fear of the drug dealers from Detroit and keeping the information from them. Agent Bevins gave her a phone number to call, and they left after about 30 to 45 minutes.

The other two officers also testified. DEA Special Agent Wren Ray's testimony was consistent with Agent Bevins. He said he did not know much about the investigation involving Defendant as he was there because he was working with Agent Bevins on a different investigation during the day and was merely with him when he stopped to speak with Defendant. As he did not know anything about the investigation, Agent Ray stated he primarily stayed in the background. He testified he never heard any threats or promises made to Defendant in exchange for information.

Officer Curt Nethercut of the Huntington Police Department also gave testimony generally consistent with Officer Bevins. He said there were no threats of arrest made, nor firearms exhibited. He also said there were no threats they would get a search warrant and he did not make any comments about it being easier to arrest her because she did not have children.

Defendant took the stand for the limited purpose of testifying that the questioning occurred on March 12, not March 18, as Officer Bevins stated. She also stated that she previously was diagnosed with bipolar disorder and depression and had received therapy in the past. Defendant did not testify to refute the officers' version of the events.

## II.
## DISCUSSION

In her motion, Defendant states she was subjected to a custodial investigation without being given her Miranda warnings and, therefore, her statements must be suppressed. In order for a court to determine whether or not someone is in "custody," it must look to the totality of the circumstances and ascertain whether a "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (internal quotation marks and citation omitted). In this case, Defendant was in her own apartment when the officers knocked on her door and asked to speak with her. After initially telling the officers they could not come into her apartment, she voluntarily went outside and spoke with them. All three officers gave consistent testimony that Defendant was told that she was not under arrest. The officers also were dressed in plain clothes and did not display any firearms. After moving inside, Agent Bevins said he and the other officers started to leave because he did not believe Defendant was giving truthful information to them, but she called them back and began giving them additional information. Clearly, these facts do not give rise to a custodial investigation. Therefore, the Court **DENIES** Defendant's motion on this ground.

Next, Defendant argues that even if the Court finds that a custodial setting did not exist, her statements should be suppressed as involuntary. A statement is involuntary only if it violates the Due Process Clause. *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997). In *Colorado v. Connelly*, 479 U.S. 157 (1986), the United States Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." 479 U.S. at 167. Merely giving "truthful statements about [the

defendant's] predicament are not the type of coercion that threatens to render a statement involuntary." *Braxton*, 112 F.3d at 782 (internal quotation marks and citation omitted).

Again, in this case there is no evidence that any threats were made against Defendant. The fact Agent Bevins told Defendant he believed she was lying and was going to leave is not coercive conduct. Similarly, there is no evidence to support any argument that Agent Bevins promised her leniency in exchange for the information. He only said that he was giving all the information to the United States Attorney's Office and, if she would cooperate, he would pass along that information as well. It is clear here that Defendant voluntarily spoke with the police about her involvement in the conspiracy. Additionally, Defendant's limited testimony that she previously was diagnosed with bi-polar disorder and depression does not merit a finding of involuntariness. *See Connelly,* 479 U.S. at 164 (holding that "a defendant's mental condition, by itself and apart from its relation to official coercion, should [never] dispose of the inquiry into constitutional 'voluntariness'). Thus, the Court **DENIES** Defendant's argument that he statement was involuntary.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motion to Suppress.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: July 24, 2009

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE